IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAMES MAY, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | § § § | |
| Plaintiff, | § | |
| V. | § § | A-16-CV-1211-RP |
| EXPEDIA, INC.; HOMEAWAY, INC.; HOMEAWAY.COM, INC., | § § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court is Defendants' Motion to Compel Arbitration and Dismiss this Suit (Dkt. #12) and all related briefing.[1] This case was stayed pending appeal of very similar issues in two other cases. Dkt. #18, 19. The Fifth Circuit issued its opinions in those cases, and the parties filed a Joint Stipulations regarding the remaining issues in this case. Dkt. #23. Now, after reviewing the pleadings, the relevant case law, as well as the entire case file, and having heard the parties' oral arguments, the undersigned issues the following Report and Recommendation to the District Court.

**I.     BACKGROUND**

HomeAway.com, Inc. ("HomeAway") operates an online marketplace for vacation rental properties. Dkt. #10 (First Amended Class Action Complaint "FAC") ¶ 16. Property owners ("Owners") can list their vacation rental properties for rent on HomeAway's websites after either buying a one-year subscription or agreeing to pay HomeAway for each booking ("pay-per-

---

[1] The motion was referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

1

booking"). FAC ¶ 19. Renters, referred to as travelers ("Travelers"), could search HomeAway's websites, locate a vacation property, and rent the property. FAC ¶ 30. For years, HomeAway represented that its marketplace and services were, and would be, free to Travelers. FAC ¶¶ 25-26.

On November 4, 2015, HomeAway announced that it was being acquired by Expedia. FAC ¶ 44. The next day, HomeAway announced a plan to introduce Traveler Fees sometime in mid-2016. FAC ¶ 45. Contrary to its previous business model, the Traveler Fee is a fee charged to Travelers each time they book a rental through HomeAway. FAC ¶¶ 47-48. The Traveler Fee took effect February 9, 2016, and ranged between 4% and 10% of the total rental rate of Owners' properties. FAC ¶¶ 46-51. The fee had a consistently negative effect on Owners. FAC ¶¶ 52-53.

May, an Owner since at least 2013, brings this suit on behalf of himself and other Owners alleging they have been injured by HomeAway's Traveler Fee. FAC ¶¶ 9, 60-63. May asserts several causes of actions against HomeAway. First, May alleges HomeAway breached its contract with him by imposing the Traveler Fee, by modifying the algorithm which displays available properties to renters to give less preferential placement to properties that are not subject to online booking, and by making substantive, non-clerical changes to the contract. FAC ¶ 75-83, 81. Second, May alleges HomeAway's imposition of the Traveler Fee constitutes fraud. FAC ¶¶ 84-94. Third, May alleges HomeAway fraudulently concealed from Owners that its algorithm gives special weight to pay-per-booking listings. FAC ¶¶ 95-106. May also asserts Oregon state law claims on behalf of the Oregon subclass and a Texas Deceptive Trade Practices Act claim on behalf of the class. FAC ¶¶ 107-128, 129-134.

HomeAway moved to compel May to arbitrate his claims, arguing May agreed to arbitrate all of his claims when he agreed to HomeAway's July 2016 Terms and Conditions ("July 2016 Terms"), which contain a mandatory arbitration clause, on two separate occasions: (i) when he renewed the HomeAway subscription for his property on September 21, 2016,[2] and (ii) when he booked his own property through HomeAway's website on October 14, 2016. Dkt. #23 (Joint Stip.) at 1 (citing Dkt. #12 (Defs.' Mot. Compel Arb.) 2–3, 7–8.). In response, May argued he did not agree to the July 2016 Terms when he renewed his subscription on September 21, 2016 because he did so in his wife's name, or when he booked his own property on October 14, 2016 because he did not have actual or constructive notice that he agreed to the July 2016 Terms when he clicked "Continue" during the booking process. Dkt. #23 (Joint Stip.) at 1 n.1 (citing Dkt. #13 (Pl.'s Opp'n) 9-12). Alternatively, May argued the agreement to arbitrate was unenforceable as illusory. Dkt. #23 (Joint Stip.) at 1-2 (citing Dkt. #13 (Pl.'s Opp'n) 3, 8–12, 12-15). Once the motion was fully briefed, the court heard the parties' oral arguments. Because the enforceability of similar HomeAway arbitration provisions were then pending before the Fifth Circuit, the court stayed this case pending those decisions. Dkt. #18, 19.

After the Fifth Circuit issued its opinion in *Arnold v. HomeAway, Inc.*, 890 F.3d 546 (5th Cir. May 15, 2018), the parties filed a notice with this court stipulating that:

> (1) the Fifth Circuit's opinion in *Arnold* addresses, decides, and effectively precludes May's argument that the arbitration clause contained in the July 2016 Terms is illusory, and therefore unenforceable.

Dkt. #23 (Joint Stip.) at 2. The parties also stipulated that:

> (2) the Fifth Circuit's opinion in *Arnold* does not address or decide May's argument that he lacked notice that he agreed to the July 2016 Terms when he clicked "Continue" during the booking process, or May's argument that his September 21, 2016 renewal of his subscription in his wife's name, and not his own name, did not bind him to the July 2016 Terms[.]

---

[2] The Terms and Conditions of his September 2015 subscription did not contain an arbitration provision.

Dkt. #23 (Jt. Stip.) at 2. The parties also stipulated as to the effect of the court's determination on this issue:

> (3) if the Court concludes that May is not bound by the July 2016 Terms, then the Court should deny HomeAway's motion; and (4) if the Court concludes that May is bound by the July 2016 Terms, then the Court should grant HomeAway's motion because May's remaining challenges to arbitration are for the arbitrator pursuant to the delegation clause incorporated into the arbitration provision.

Dkt. #23 (Jt. Stip.) at 2. Accordingly, the only issue now before the court is whether May is bound to the July 2016 Terms because he renewed his property's HomeAway subscription on September 21, 2016, or because he booked his own property through HomeAway's website on October 14, 2016.

## II.     ARBITRATION AGREEMENTS

When a party seeks to compel arbitration based on a contract, the first question for the court is whether there is a contract between the parties at all. *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) (citing *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201-02 (5th Cir. 2016)). In conducting this inquiry, courts distinguish between "validity" or "enforceability" challenges and "formation" or "existence" challenges. *Id.* (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 n.2 (2010); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)). "[W]here the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." *Id.* (quoting *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004)). Though the difference between formation and validity may be unclear at the margins, the Supreme Court has suggested that the category of arguments that question the very existence of an agreement include "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the

mental capacity to assent." *Id.* (citing *Buckeye Check Cashing*, 546 U.S. at 444 n.1). Whether the parties entered a valid arbitration contract turns on state contract law.[3] *Kubala*, 830 F.3d at 202.

### III. ANALYSIS

#### A. September 21, 2016 Renewal

May renewed his one-year subscription agreement on or about September 29, 2015, and the Terms and Conditions in effect at that time did not include an arbitration provision. May contends that just before that subscription was about to expire, on about September 21, 2016, he changed the user/member associated with the subscription from his name to his wife's name, and then renewed the subscription in his wife's name alone, acting on her behalf and with her authorization. Dkt. #13-1 (May Decl.) ¶ 7. He states he did this specifically to avoid being bound to the September 21, 2016 renewal agreement's Terms and Conditions ("July 2016 Terms"), which included the mandatory arbitration provision that HomeAway now seeks to enforce. Dkt. #13-1 (May Decl.) ¶ 8. Thus, he argues he did not agree to the July 2016 Terms on his own behalf when he purchased the 2016 renewal in his wife's name.

May offers no legal argument or argument based on the September 2015 Terms and Conditions that changing the user/member associated with the September 2015 subscription had any legal effect. *See* Dkt. #13 (Pl.'s Resp.) at 8-9. As HomeAway points out, the September

---

[3] The parties dispute the applicable choice of law because they dispute which set of Terms and Conditions apply to May's claims and whether the agreement to arbitrate is illusory under either state's law. The parties make no arguments that different results would be reached by applying Texas or Oregon law to the limited issue here of whether May entered into an agreement that contained an arbitration clause. Both states generally require an offer, acceptance, and mutual assent to the terms of the agreement in order to form a contract. *See Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016); *Glob. Exec. Mgmt. Sols., Inc. v. Int'l Bus. Machines Corp.*, 260 F. Supp. 3d 1345, 1368 (D. Or. 2017); *Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*, 120 P.3d 6, 11 (Or. Ct. App. 2005), modified on reconsideration, 126 P.3d 1254 (Or. Ct. App. 2006); *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007).

5

2015 Terms and Conditions did not allow May to assign the agreement without HomeAway's written consent:

> Assignment: We may assign these Terms in our sole discretion. Users must obtain our prior written consent to assign these Terms, which may be granted or withheld by us in our sole discretion.

Dkt. #10-1 (Sept. 2015 T&C § 21, ¶ 19). May offers no evidence of HomeAway's consent of his purported assignment to his wife. *See* Dkt. #13 (Pl.'s Resp.) at 8-9. Accordingly, May has not shown that he is not legally bound by his September 2016 renewal merely because he previously changed the name on the account to his wife's name. Therefore, May bound himself to the July 2016 Terms when he renewed his subscription in September 2016.

### B. October 14, 2016 Booking

Although the undersigned has found that May bound himself to the July 2016 Terms when he renewed his subscription in September 2016, the undersigned addresses the next issue in the event the District Court does not adopt the prior finding.

May also argues he was unaware that by booking his property in October 2016 that he was agreeing to the July 2016 Terms in effect at that time. Dkt. #13-1 (May Decl.) at ¶¶ 13-16. He contends the placement and typeface of the Terms and Conditions hyperlink were not sufficiently specific to charge him with notice of the July 2016 Terms. *See* Dkt. #13 (Pl.'s Resp.) at 10-12 (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175-79 (9th Cir. 2014)).

The website in the *Nguyen* case, on which May relies, merely provided a link to the terms at the bottom of the webpage and did not require any affirmative action to demonstrate agreement to the terms. *Nguyen*, 763 F.3d at 1174. In contrast, the HomeAway site required the user to click a "Continue" button to complete the transaction, and directly above the "Continue" button informed the user that "[b]y clicking 'Continue' you are agreeing to our Terms and

Conditions and Privacy Policy." Dkt. #12-1 at 93. The "Terms and Conditions" and "Privacy Policy" were in blue, as opposed to black, font to indicate they were hyperlinks.



Dkt. #12-1 at 93. The HomeAway website was sufficient to put May on notice that by continuing the transaction he was agreeing to the then-in-effect Terms and Conditions and to bind him to those Terms and Conditions. *See Beard v. PayPal, Inc.*, No. CIV.A. 09-1339-JO, 2010 WL 654390, at *1, *3 (D. Or. Feb. 19, 2010) (finding a user was bound to the terms of the User Agreement where the user was required to check a box indicating assent in order to continue with registration); *Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-cv-0891-B, 2007 WL 4823761, at *7 (N.D. Tex. Sept. 12, 2007) (applying Texas law, party who never affirmatively manifested assent to online terms was nevertheless bound by them because the

party had actual knowledge of the terms and continued to use the website); *see also Cubria v. Uber Techs., Inc.*, No. 1:16-cv-544-SS, 2017 WL 1034731, at *5 (W.D. Tex. Mar. 16, 2017) (applying California contract formation law, user assented to Terms of Service where registration website stated, "By creating an . . . account, you agree to the Terms of Service"); *Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016) (applying California contract formation law, user assented to Terms of Service where sign-up screen stated, "By signing up, I agree to Airbnb's Terms of Service"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 841 (S.D.N.Y. 2012) (applying Second Circuit law and surveying other jurisdictions, holding user to Terms of Servicer where user clicked a button labeled "Sign Up" that appeared immediately above the phrase, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service"). May had actual knowledge of the Terms and Conditions that were in effect at that time and he nonetheless proceeded with his transaction. Dkt. #13-1 (May Decl.) at ¶¶ 7-8.

### C. Equitable Considerations

Moreover, May's position would lead to a facially inequitable result. Under May's theory, he was entitled to all the benefits of the 2016 subscription renewal without being bound to the terms he did not want to accept. By his own admissions, he was the one who changed the name on the account to his wife's name, and he was the one who renewed the subscription. Dkt. #13-1 (May Decl.) ¶¶ 7-8. He did so specifically to gain the benefits of the subscription renewal and to attempt to avoid being bound to the arbitration provision. Dkt. #13-1 (May Decl.) ¶ 8; *see* Dkt. #12-1 (Agbodan Decl.) at ¶ 13 ("As of April 25, 2017, May has rented out his property through HomeAway's sites more than 20 times since renewing his subscription on September 21, 2016. He has received more than $16,000 in payments related to those rentals . . . ."). Federal

courts in both Texas and Oregon recognize that a non-signatory may be held to an arbitration provision when the nonsignatory knowingly exploits or obtains a direct benefit from the underlying agreement. *See Nguyen*, 763 F.3d at 1179; *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267–68 (5th Cir. 2004) (estopping nonsignatory wife of borrower from avoiding arbitration clause of loan agreement made between her husband and lender and citing other circuit court cases recognizing the operation of the doctrine of equitable estoppel on non-signatories in an arbitration context); *Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 369-73 (S.D. Tex. 2006); *Legacy Wireless Servs. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1056 (D. Or. 2004).  May had actual knowledge of the July 2016 Terms and he continued to offer his property for rent through the HomeAway site under those Terms and Conditions.  Dkt. #13-1 (May Decl.) at ¶¶ 7-8.  Even if he were not contractually bound to the July 2016 Terms, he is equitably estopped from contending he is not bound by them.

### D. Conclusion

May admits he had actual knowledge of the July 2016 Terms and its mandatory arbitration clause.  Dkt. #13-1 (May Decl.) at ¶ 8.  He also concedes that he continued to do business with HomeAway and through the HomeAway site.  Dkt. #13-1 (May Decl.) at ¶¶ 8, 13.  He renewed his subscription agreement with HomeAway and booked his own property through the site.  By doing so, he agreed to the Terms and Conditions that were then in effect, including the mandatory arbitration provision.  May is contractually bound by the July 2016 Terms.  Moreover, even if he were not contractually bound, he would be equitably estopped from contending he is not bound by the July 2016 Terms.

## IV.  RECOMMENDATIONS

For the reasons given above, the undersigned **RECOMMENDS** the District Court **GRANT** Defendants' Motion to Compel Arbitration and Dismiss this Suit (Dkt. #12).

## V.  OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED  July 19, 2018.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE